IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD V. SPARWASSER,

                Plaintiff,                                                    CV-10-574-HU

        v.                                                    FINDINGS AND
                                                       RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                        Defendant.

HUBEL, Magistrate Judge:

      Plaintiff Ronald Sparwasser brings this action for judicial review of a final decision of the

Commissioner of Social Security denying his application for disability insurance benefits (DIB)

under Title II of the Social Security Act.  The court has jurisdiction under 42 U.S.C. § 405(g).  The

Commissioner's decision should be affirmed.

/ / / /

/ / / /

/ / / /

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Sparwasser was fifty-four years old on the date last insured. Admin. R. 21.[1]  He completed college and worked as a teacher, instructor, and doing in-home sales work. *Id.* at 82, 274-275. Sparwasser alleges disability due to organic brain disorder and depression. He filed for disability on April 13, 2004 alleging disability from January 1, 2000. His application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on August 23, 2007. The ALJ found Sparwasser satisfied the insured status requirements for a claim under Title II through September 20, 2001. *Id.* at 15. Sparwasser must establish that he was disabled on or before that date to prevail on his DIB claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on September 11, 2007 finding Sparwasser not disabled before the date last insured, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. 20 C.F.R. §

---

[1] Citations to "Admin. R." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

2 - FINDINGS AND RECOMMENDATION

404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ applied the five step disability

determination analysis and found at step one that Sparwasser did not engage in any substantial

gainful activity (SGA) during the period from his alleged onset date of January 1, 2000 through

his date last insured of September 30, 2001. Admin. R. 15. At step two, she determined that

Sparwasser has the medically severe impairments of "Organic Mental Disorder with Depression

and a one-time diagnosis of arthritis of the right hip." *Id.* The ALJ found at step three that

Sparwasser did not have, through the date last insured, an impairment or combination of

impairments that meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404,

subpt. P, App.1. *Id.* at 19.

The ALJ found Sparwasser had the residual functional capacity (RFC) at the date last

insured to perform light work with the vocational non-exertional limitation of no more than

simple, routine, repetitive type work tasks. *Id.* at 19-21. The ALJ elicited the testimony of a

vocational expert (VE) and found at step four that Sparwasser was not capable of performing his

past relevant work. *Id.* at 21.

The ALJ proceeded to step five and noted that on the date last insured Sparwasser was an

individual closely approaching advanced age. *Id.* Based on the testimony of the VE, the ALJ

found that through the date last insured, there were a significant number of jobs in the national

economy that Sparwasser could perform. *Id.* at 22-23. The ALJ found that during the relevant

period, Sparwasser was not disabled within the meaning of the Social Security Act. *Id.* at 23.

## **STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole. *Batson*

3 - FINDINGS AND RECOMMENDATION

*v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for "determining credibility, resolving conflicts in the medical testimony, and resolving ambiguities."  *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001)(citations omitted).  If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner.  *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193.

## DISCUSSION

Sparwasser alleges the ALJ erred in evaluating the vocational evidence at step five.  He asserts the ALJ failed to show sufficient consideration for his borderline age status.  Sparwasser further alleges the ALJ erred in accepting the VE testimony regarding jobs he was capable of performing.  Finally, Sparwasser argues that additional evidence provided to the Appeals Council should be considered by an ALJ.

## I.    Medical Background

Sparwasser's medical records indicate that in 1991 he began care with Dr. Cooley, a psychologist, for depression.  Admin. R. 139-140.  Sparwasser received stress-related disability from the state and stopped being a classroom teacher in 1992.  *Id.*  Dr. Cooley noted in 1997 and 1999 that Sparwasser was capable of some work, but that he could not return to classroom teaching.  *Id.*  at 139-143.  Dr. Cooley also noted that Sparwasser was self-employed and was also an instructor doing training for alcohol servers.  *Id.*

4 - FINDINGS AND RECOMMENDATION

Sparwasser established care with Dr. Lindsey, a primary care physician, in February 2000. *Id.* at 151-152. Dr. Lindsey noted Sparwasser stated he was having some trouble with memory, particularly related to using the computer, but the problem had been gradual. She noted he was oriented to time, place, and person; had no obvious memory deficits; and advised him to stop alcohol consumption. Dr. Lindsey ordered an MRI and referred Sparwasser to a neurologist. *Id.* Sparwasser's brain MRI was normal. *Id.* at 156.

Dr. Jamison, a neurologist, examined Sparwasser and wrote to Dr. Lindsey on March 30, 2000. *Id.* at 120-122. He noted that forgetfulness did not have an impact on Sparwasser's work activities and he was taking St. John's Wort and took Paxil for depression. Dr. Jamison further noted that Sparwasser enjoyed skiing and rafting and had normal tests and a normal MRI. He stated Sparwasser was "a very good historian and conversations between he and his wife demonstrate superb short term and detail oriented knowledge." *Id.* at 121. Dr. Jamison stated he believed Sparwasser's subjective complaint of forgetfulness was related to under-treated depression and anxiety. *Id.* at 122. He placed him on Paxil and recommended follow up with his psychologist. *Id.*

On April 18, 2000, Dr. Cooley noted Sparwasser had exacerbated depression from losing his disability because of his current job as an instructor. *Id.* at 138. On June 15, 2000 Dr. Cooley noted he believed Sparwasser was making adequate progress and that he took data home and worked on it between sessions. *Id.* at 134. Dr. Cooley noted on July 30, 2001 that Sparwasser was under a lot of stress from the loss of disability benefits from the state. *Id.* at 130-133. He also noted Sparwasser reported his memory, particularly for names, was not as good. However, he noted it was not "real serious" and comes and goes. Dr. Cooley also noted

5 - FINDINGS AND RECOMMENDATION

Sparwasser had stopped taking his prescription medication, but had started taking it again.  He further noted Sparwasser did yard work; painted his house; went rafting and was in a new raft club; and stayed up to date on his instructor duties.  *Id.*

Dr. Cooley wrote a letter on August 6, 2001, to an attorney regarding Sparwasser's disability status.  *Id.* at 127-129.  He noted he reviewed the medical notes from Drs. Lindsey and Jamison and that in his opinion Sparwasser's symptoms were consistent with depression controlled somewhat by medication.  Dr. Cooley noted his opinion had always been that Sparwasser should find work and he believed Sparwasser's current job worked well for him and how much he works depended on his psychological status.  *Id.* at 129.  On March 8, 2002, Sparwasser was accompanied by his wife to Dr. Cooley to discuss memory issues.  *Id.* at 126.  Mrs. Sparwasser noted that Paxil had improved Sparwasser's mood, but not his memory.  Dr. Cooley performed a memory assessment in a "semi-structured" fashion and found Sparwasser's recent and immediate memory impaired.  *Id.*  He suggested a neuropsychiatric examination.

Dr. Lindsey treated Sparwasser for some hypertension on December 9, 2002.  *Id.* at 149-150.  On April 9, 2003, Dr. Lindsey performed an examination and noted Dr. Jamison did not believe Sparwasser had dementia, but put him on Paxil for depression.  *Id.* at 155, 221-222.  She noted that Paxil can have short term memory effects so she switched him to Effexor.  Dr. Lindsey noted an x-ray showed some degenerative arthritis in the right hip joint.  Dr. Lindsey saw Sparwasser and Mrs. Sparwasser on April 22, 2003.  Mrs. Sparwasser stated Sparwasser had improved mood on Effexor, but that he did not remember things.  *Id.* at 220.

Dr. Goslin, a neurologist, wrote to Dr. Lindsey on September 11, 2003, noting Sparwasser had worsening symptoms, forgetting names and appointments.  *Id.* at 169-170.  She

6 - FINDINGS AND RECOMMENDATION

noted he was doing less housekeeping, but was able to maintain all activities of daily living and reading.  Dr.  Goslin noted he had some difficulty remembering and his wife handled finances and schedules.  She also noted his neurological examination was normal with some difficulty with short term memory and a mini-mental status of 27/30.  Dr.  Goslin stated she ordered a repeat of testing.  The results of the MRI of the brain taken on September 16, 2003, were normal as was his other testing.  *Id.*  at 171-172.

On October 2, 2003, Dr.  Goslin wrote to Dr.  Lindsey noting that she discussed with Sparwasser the possibility that he had a progressive cognitive disorder and recommended a PET scan.  *Id.*  at 248.  She also noted that she prescribed Aricept.  Dr.  Goslin wrote to Dr.  Lindsey on March 4, 2004, and noted that Sparwasser and his wife noticed improvement in his memory and overall functioning since starting the Aricept.  *Id.*  at 167.  Dr.  Goslin also noted Sparwasser continued to be frustrated easily by complex tasks and his mini-mental status was 26/30 with most problems in short term memory.  However, she noted he was relatively knowledgeable about current events.  Dr.  Goslin assessed mild cognitive impairment responding with Aricept.  *Id.* Mrs.  Sparwasser wrote to Dr.  Lindsey on May 5, 2004, stating Sparwasser was diagnosed with early onset Alzheimer's disease by Dr.  Goslin and was applying for DIB.  *Id.*  at 219.  She further stated that they had pursued that diagnosis beginning in 1999 and that he was mis-diagnosed with depression.

Dr.  Lindsey examined Sparwasser on May 20, 2004, noting he had memory problems and was recently diagnosed with early onset Alzheimer's disease.  *Id.*  at 217-218.  She noted he was still doing pretty well and was able to drive.  Dr.  Lindsey noted that Mrs.  Sparwasser wanted to change anti-depressants, but Dr.  Goslin thought his medication was a good match.  Dr.  Goslin

7 - FINDINGS AND RECOMMENDATION

wrote to Dr. Lindsey on October 20, 2004, stating Sparwasser's daughter had noted worsening symptoms since his last visit and his wife's death. *Id.* at 246. Sparwasser's daughter noted he had more difficulty with complex activities, processes that required more than two steps and also clear problems with short term memory. However, she noted he could still drive, did not get lost, and was able to keep track of his medications. Dr. Goslin assessed memory impairment with the history of progression that was most consistent with Alzheimer's-type dementia, though it was still very early in his presentation. She noted his symptoms for the last three years were related to this diagnosis and not depression. *Id.*

Dr. Lindsey noted on October 22, 2004, that Sparwasser was still very active, missed his wife, but was coping. *Id.* 216. She noted a borderline slow pulse. Dr. Hennings, a state agency consultant, noted the new diagnosis of organic mental disorder or early onset Alzheimer's disease on November 11, 2004. *Id.* at 194-209. He limited Sparwasser's work activities to simple routine tasks with only frequent exposure to the general public. He affirmed the original determination of not disabled up to the date last insured. Dr. Goslin noted in March 2005 that Sparwasser had not noted any progression although he did not take on complicated things, or use a computer. *Id.* at 240. She noted he was bored, depressed and wanted to be with his wife. She referred him to Dr. Reiter for testing.

Dr. Lindsey noted in November of 2005 that Sparwasser did not want to restart Effexor or Aricept. *Id.* at 213-215. He did give permission to call his daughter. Dr. Lindsey noted on November 1, 2006, that Sparwasser's mental status was gradually deteriorating and that he could do self care activities; find his way home; remember where he lives; recognize familiar faces; converse in a meaningful manner; and remember the date. *Id.* at 210-211. She noted no

confusion, delusions, incontinence, sweating, tremor or disturbed sleep, but that he was depressed. Sparwasser's daughter wanted him to take Aricept, Namenda and an anti-depressant medication and would make sure he took his medication. Dr. Lindsey prescribed Cymbalta and Aricept. Dr. Lindsey wrote a letter to Sparwasser's attorney on November 3, 2007, stating that Sparwasser's early onset of Alzheimer's disease was present in his first visit to her in February 2000. *Id.* at 256-257.

## II.    Vocational Evidence

Sparwasser argues he was in a borderline age situation and the ALJ erred by not using an older age category in her vocational evaluation. The ALJ found Sparwasser could not perform his past relevant work and made a step five finding that there were other jobs in the national economy that Sparwasser could perform. At step five, the Commissioner must show that significant numbers of jobs exist which the claimant can perform. *Andrews v. Shalala*, 53 F.3d at 1043. An ALJ can satisfy this burden by either reference to the Medical-Vocational guidelines (grids) or by eliciting the testimony of a vocational expert ("VE") with a hypothetical question that sets forth all the limitations of the claimant supported by the record. *Id.; Osenbrock v. Apfel*, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

The ALJ noted that because Sparwasser had a non-exertional limitation, she was using the grids as a framework for her decision and sought the testimony of a VE. Admin. R. 22, *Osenbrook v. Apfel,* 240 F.3d at 1162 (where there are significant non-exertional impairments the ALJ cannot rely solely on the grids). When applying the grids, there are three age categories: younger person (under age 50), person closely approaching advanced age (50-54), and a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563. The regulation states that the age category

will not be applied mechanically.  If a claimant is within a few months of reaching an older age

category which would result in a determination of disabled, the ALJ will consider whether to use

the older age category after evaluating the overall effect of all factors.  *Id*.  The ALJ is not

required by the regulation to use an older age category, but only to consider whether to do so.

*Lockwood v. Commissioner Social Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir. 2010).

Sparwasser alleges the ALJ failed to meed the standard set it *Lockwood* regarding

consideration of using an older age category.  In *Lockwood,* the court found the ALJ satisfied the

requirement that she considered whether to use the older age category.  *Id*.  The court noted the

ALJ mentioned in the decision the claimant's date of birth and included a citation to the specific

regulation, 20 C.F.R. § 404.1563, which demonstrated the ALJ was aware that she had discretion

to use the older age category after evaluating the effect of all factors.  *Id*. at 1071-1072.  In

addition, the court noted the ALJ demonstrated she did not "'apply the age categories

mechanically' because the ALJ 'evaluated the overall impact of the factors of [Lockwood's] case'

when the ALJ relied on the testimony of a vocational expert before she found Lockwood was not

disabled."  *Id*. at 1072.

The ALJ, contrary to Sparwasser's argument, complied with the factors noted in

*Lockwood.*  She noted Sparwasser's date of birth and that he was an individual closely

approaching advanced age on the date last insured.  Admin. R. 21.  The ALJ also cited the

regulation in question, 20 C.F.R. 404.1563.  *Id*.  Finally, the ALJ also relied on the testimony of a

vocational expert (VE) noting that Sparwasser had non-exertional limitations.  *Id*. at 22.

Sparwasser contends that he had "vocational adversities" such as the need for prompts and

cues.  The Commissioner's Hearings, Appeals, and Litigation Manual (HALLEX) 11-5-3-2 does

10 - FINDINGS AND RECOMMENDATION

not require the ALJ to explain the decision to use claimant's chronological age if additional

vocational adversities are absent. *Lockwood v. Astrue,* 616 F. 3d at 1072. The ALJ did not find

that Sparwasser needed prompts and cues, but questioned the VE if that would affect the number

of jobs Sparwasser could perform. Admin. R. 21, 23. The VE testified that it would not. *Id.* at

275-276, 278. The ALJ noted that in August 2001, one month before the date last insured, Dr.

Cooley believed Sparwasser could perform work other than teaching. *Id.* at 16. The ALJ noted

her RFC, which does not include the need for prompts and cues, but is limited to simple,

repetitive, routine tasks, was consistent with the opinion of the state agency consultants and Drs.

Jamison, Cooley, Lindsey, and Goslin. *Id.* at 21. The state agency consultants found that

Sparwasser could do simple routine tasks. *Id.* at 194-204.

   Sparwasser further argues, as did the claimant in *Lockwood,* that the Social Security

Program Operations Manual System (POMS) requires the ALJ to articulate why she chose a

particular age category. POMS DI 25015 (D)(4)(effective March 22, 2011). Sparwasser notes

that if a regulation promulgated by an Agency is ambiguous, the Agency's interpretation of that

regulation is controlling in the enforcement of the regulation citing *Auer v. Robbins*, 519 U.S. 452,

461 (1997)(Secretary's interpretation of a salary basis test is controlling unless plainly erroneous

or inconsistent with the regulation). Sparwasser's attempt to somehow extend this holding to

require the POMS interpretation over the HALLEX interpretation in not persuasive. The Court in

*Lockwood* stated,

   Like HALLEX, POMS constitutes an agency interpretation that does not impose judicially
   enforceable duties on either this court or the ALJ...Such agency interpretations are entitled
   to respect, but only to the extent that those interpretations have power to persuade...We are
   not persuaded by the cited section of POMS that the statute and regulations require the
   ALJ to provide further explanation with specific factors, for several reasons...Moreover,
   the later version on POMS cited by Lockwood is inconsistent with the guidance in

11 - FINDINGS AND RECOMMENDATION

> HALLEX.  The Social Security Administration's lack of a consistent direction weighs against giving POMS any substantial weight.  Finally, the POMS guidance is not a persuasive interpretation of the regulation.  The regulation at issue here requires only that the ALJ consider whether to use the older age category; it does not impose any obligation to make express findings incorporated in the ALJ's opinion.

*Lockwood v. Commissioner of Social Sec. Admin.,* 616 F.3d at 1073 (citations omitted).

Sparwasser also argues 20 C.F.R. § 404.1602, *Definitions,* which defines "other written guidelines" as including POMS, requires the use of POMS in all instances of regulation interpretation.  This argument is also unpersuasive.  The definitions describe the purpose of the regulations and the meaning of terms frequently used in the regulations.  Sparwasser asserts POMS must be applied rather than HALLEX in order to ensure uniformity of adjudication because the definition of "other written guidelines" includes POMS.  However, Sparwasser does not cite a regulation that includes the term "other written guidelines" to justify his assertion that POMS guidelines prevail in interpretation of all regulations.

The *Lockwood* court noted that Agency interpretations are entitled to respect, but only if persuasive, *Id.*, citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).  As noted above, the court in *Lockwood* addressed the very issue argued by Sparwasser - whether the ALJ is required to make additional express findings regarding consideration of a borderline age category - and found the ALJ did not.  The court in *Lockwood* also noted that the Sixth Circuit addressed the same issue.  The Sixth Circuit found the ALJ was not required to address the borderline age situation in his opinion because the regulation merely states that the Commissioner will "consider veering from the chronological-age default in borderline situations."  *Lockwood v. Commissioner of Social Sec. Admin.,* 616 F.3d at 1073-1074 (citing *Bowie v. Commissioner of Social Sec. Admin.,*

539 F.3d 395, 399 (6th Cir. 2008).  The ALJ satisfied the *Lockwood* standard regarding

consideration of a higher age category.

      The VE testified that there were a significant number of jobs in the national economy that

a person of Sparwasser's age, education and RFC can perform.  Admin. R.  275-278.  Sparwasser

contends that these jobs are inconsistent with his RFC of being limited to simple routine tasks

because they are at a reasoning level of two.  This argument is also unpersuasive.  The Dictionary

of Occupational Titles (DOT) job definitions include a summary of the actions required,

instructions followed, judgments made, the specific tasks the worker performs, and so forth, for

each occupation.  The DOT provides auxiliary information in a definition trailer comprised of

various codes relating to a number of factors.  One such component is the general education

development, which approximates the educational level the worker should have achieved for

satisfactory job performance in the occupation.  A sub-component of general education

development is the reasoning level.  Reasoning level two requires the "ability to apply

commonsense understanding to carry out detailed but uninvolved written or oral instructions."

DOT, Appendix C, *available at*

http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

      Sparwasser contends the VE's testimony is inconsistent with the reasoning sub-component

of the general education development component of the definition trailer appended to the DOT

job descriptions.  It is not clear that there is an inconsistency.  The detail required in the definition

trailer refers to instructions, but the detail precluded by Sparwasser's RFC refers to tasks.  Courts

have found the ability to carry out simple tasks consistent with reasoning level 2.  *See Hackett v.*

*Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning appears consistent with

13 - FINDINGS AND RECOMMENDATION

"simple and routine work tasks"); *Money v. Barnhart*, 91 Fed. Appx. 210, 215 (3rd Cir.

2004)(reasoning level two does not contradict limitation to simple, routine, repetitive work);

*Harrington v. Astrue*, No. 07-1330-JM, 2009 WL 102689 at *2 (S.D. Cal. Jan. 14, 2009) (simple,

repetitive work is consistent with the definition of GED reasoning level two); *Koch v. Astrue*, No.

08-609-PK, 2009 WL 1743680 at *17 (D. Or. June 15, 2009) (level two reasoning is consistent

with simple, routine tasks); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983-984 (C.D. Cal.

2005)(same).

The RFC does not limit Sparwasser to simple instructions, but only to simple, repetitive

tasks. Sparwasser admits that reasoning level two is compatible with simple, repetitive tasks.

Pl.'s Reply Br. 8, citing *Meiss.* The ALJ's step five conclusion that Sparwasser was able to

perform some work and was not disabled on the date last insured is supported by substantial

evidence and free of legal error.

## III.   Additional Evidence

Sparwasser asserts that the additional evidence supplied to the Appeals Council should be

considered by an ALJ. Sparwasser submitted a letter from Dr. Lindsey dated November 3, 2007,

stating that Sparwasser's diagnosis of early onset Alzheimer's disease was present in his first visit

to her in February 2000. Admin. R. 256-257. However, Dr. Lindsey does not note that

Sparwasser's functional limitations at that time were inconsistent with the ALJ's RFC. Indeed,

the evidence from all of Sparwasser's physicians and his psychologist indicate that up to the date

last insured his functional limitations were not severe. Changing Sparwasser's diagnosis to early

onset Alzheimer's disease from depression does not change the observed functional limitations at

that time. Although Sparwasser's functioning level declined over the years, the ALJ was limited

14 - FINDINGS AND RECOMMENDATION

to looking at his functioning level at the date last insured.  The Appeals Council decision that the new evidence would not alter the ALJ's decision is reasonable and should be upheld.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Sparwasser, on the date last insured, did not suffer from a disability within the meaning of the Social Security Act is based on correct legal standards and supported by substantial evidence.  The Commissioner's final decision should be affirmed.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due August 15, 2011.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections and must do so no later than September 1, 2011.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.


IT IS SO ORDERED.

DATED this 26th day of July, 2011.

/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge


15 - FINDINGS AND RECOMMENDATION